**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Daniel Aloysius JONES, Defendant-Appellant.**

**No. 73-1727.**

United States Court of Appeals, Ninth Circuit.

Nov. 12, 1973.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 7, 1974.

**677**

Luke McKissack, Hollywood, Cal., Daniel A. Jones, in pro per, for defendant-appellant.

V. DeVoe Heaton, U. S. Atty., Richard P. Crane, Jr., Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before CHOY and GOODWIN, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

Jones appeals his conviction of six violations of the National Firearms Act, 26 U.S.C. § 5861(d), (e), and (i) (1970) for possession of two unregistered silencers, unlawful transfer of the silencers and possession of silencers not identified by serial numbers. We affirm.

Early in January of 1972, John Ray, a friend of appellant, and, as it subsequently appeared at trial, a government informant, asked appellant to obtain a silencer for a .22 caliber handgun. On January 21, Ray took Beckwith, a special agent, to appellant's home and introduced him as the one desiring to purchase the silencer. At this meeting, Jones sold a .22 caliber pistol fitted with a silencer to Beckwith, who also requested that Jones procure a silencer for a larger weapon. Jones said he would try to get such a device. This request was repeated several times over the next few months.

Beckwith, accompanied by Ray, reiterated the request at a May 27 meeting with appellant and gave Jones a .45 caliber pistol to be fitted for the silencer. Over the next two months, Beckwith continued to press Jones to produce the .45 caliber silencer, but Jones repeatedly claimed difficulty obtaining it. Finally, on July 28 Beckwith again met with Jones. Declaring his inability to procure the .45 caliber silencer, Jones sold him a .22 caliber model for $250. At that meeting Jones, in response to a request by Beckwith, also stated he would attempt to arrange for the purchase of ten additional silencers. Further, Jones discussed the possibility of obtaining machine guns and explosives from Beckwith for the Irish Republican Army. The appellant, however, did not pursue either of these suggestions.

Jones assigns five grounds for reversal on appeal.

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

## Entrapment

Jones argues that there was entrapment as a matter of law in the commission of these crimes. His claim is that he was induced to commit these crimes solely by reason of his friendship with Ray and only reluctantly procured the silencers, after repeated urgings by Beckwith and Ray, as a favor to Ray.

 Entrapment "is a relatively limited defense." United States v. Russel, 411 U.S. 423, 435, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). "It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." United States v. Russel, *supra* at 236. There are essentially two inquiries necessary to determine if there has been entrapment: First, entrapment will not be found where the defendant had a predisposition to commit the crime. *See* Sherman v. United States, 356 U.S. 369, 372–373, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932); United States v. Griffin, 434 F.2d 978, 981 (9th Cir. 1971), cert. denied, sub nom., 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971). Second, there must have been some form of inducement sufficient to overcome even an innocent predisposition; the provision alone of facilities to commit the crime does not constitute entrapment. *See* Sherman v. United States, *supra,* 356 U.S. at 372–373, 78 S.Ct. 819; Sorrells v. United States, *supra,* 287 U.S. at 441–442, 53 S.Ct. 210; United States v. Ewbank, 483 F.2d 1149 (9th Cir., 1973).

 In this case the government has clearly met its burden of disproving entrapment. That appellant had the predisposition to illegally procure and sell the silencers is shown by a number of facts. Jones readily procured the first silencer in January, and it took but little persuasion for him to sell the agent the second silencer in July. Before July 28th he, by his own admission, attempted to obtain a .45 caliber silencer. Moreover, on July 28th he said he would attempt to procure ten additional silencers. At one meeting with Beckwith, appellant stated that he dealt with a supplier of silencers who came through Las Vegas approximately once a month. Jones also discussed his desire to obtain from Beckwith a supply of machine guns and explosives for the Irish Republican Army. Finally, Jones testified he was not shocked, only a bit surprised, at Ray's requests. In fact, Jones admitted he never did anything to discourage these transactions. Surely, there was ample evidence to enable a jury to find that appellant had the predisposition to commit these crimes.

 Nor is there any lack of evidence upon which the jury could have found that the inducements of the government agents were not sufficiently coercive to constitute entrapment. Friendship is not, by itself, a sufficient inducement to constitute entrapment as a matter of law. United States v. Quevedo, 399 F.2d 307 (9th Cir. 1968). This case simply falls far short of the sort of conduct condemned as entrapment in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) and Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

## Hearsay

 Appellant contends that a statement made at trial by Beckwith was inadmissible hearsay. In response to a question asked by the trial judge, Beckwith said that "it was common knowledge that if you wanted a weapon, you would contact Dan Jones." We find it unnecessary to decide if it was error to admit this statement, for we find that, in any case, its admission was harmless error. Only entrapment was at issue at trial and on that issue the admitted statement would only have been cumulative evidence of the predisposition of the defendant to commit the crime. There is overwhelming evidence to negate the defense of entrapment. There is thus no "reasonable possibility that the [arguably] improperly admitted testimony

contributed to the conviction. . . ."
Olivas v. Arizona ex rel. Eyman, 447 F.
2d 974, 975 (9th Cir. 1971).

### Refusal of Subpoena

The trial court refused to issue a subpoena for the appearance of Ray at the trial. That subpoena was not requested until the second and final day of the trial. The appellant avers that the request was not made until then because it was not earlier known that Ray was a government informant. However, appellant's counsel interviewed Ray prior to the trial; he was told that Ray was the cause of Jones' difficulties but decided that Ray's testimony was not desired. Further, the fact that Ray was an informant was elicited in testimony on the first day of trial. As the trial judge noted, if appellant's counsel had then requested a subpoena, Ray probably could have been summoned without delaying the trial. A trial court need not order a subpoena of a witness where there is inexcusable delay in the request for the order. See United States v. Grooms, 454 F.2d 1308, 1311 (7th Cir. 1972), cert. denied, 409 U.S. 858, 93 S.Ct. 141, 34 L. Ed.2d 103 (1973); cf. United States v. Bottom, 469 F.2d 95 (9th Cir. 1972).

### Multiple Counts

Appellant maintains it was error to try him on more than a single count for each of the two illegal transactions. He bases his argument on United States v. Clements, 471 F.2d 1253 (9th Cir. 1972). There, the defendant was similarly charged with separate offenses under the National Firearms Act, although they arose from a single factual situation. He was sentenced to consecutive sentences on each of the counts. Based on statutory interpretation, the court found only that the imposition of cumulative sentences was not authorized by the statute.

Clements is clearly distinguishable from this case, for it proscribes only cumulative *punishment* for offenses arising under the National Firearms Act, not *conviction* on multiple counts. Indeed the court in Clements appeared to recognize this distinction. See United States v. Clements, 471 F.2d at 1254. Congress has the power to establish that a single act constitutes more than one offense, at least as long as each offense requires proof of a fact the other does not. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The National Firearms Act sets forth a series of offenses, many of which can obviously arise from a single act. The absence of any indication in the statute or legislative history that prosecutions have to be confined to a single offense makes it quite evident that Congress intended to allow the government broad latitude in prosecuting firearms crimes. The policy was not to force the government to elect a single offense to prosecute. Therefore, Jones was properly tried and convicted on multiple counts. Cf. United States v. Stella, 448 F.2d 522 (9th Cir. 1971); United States v. Brown, 482 F. 2d 1359 (9th Cir. 1973).[1]

### Sentencing Information

Jones claims it was a denial of procedural due process not to reveal certain information upon which sentencing was based. Apparently, the trial judge had received information, not embodied in a formal presentence report, which he may have considered in meting out a sentence. "The rule in the federal courts is that the right to examine a presentence report is not one of constitutional magnitude and that the trial judge, in his discretion, may deny an accused an opportunity to inspect the report." Fernandez v. Meier, 432 F.2d

---

1. Jones was not assigned consecutive sentences for offenses arising out of the same factual situation. The court merged for sentencing purposes the three counts arising from each transaction, so that punishment for the component offenses within each of the two transactions ran concurrently, but the two transactions themselves resulted in consecutive sentences of five years each. So long as sentencing is done in this manner, there is no violation of the Clements doctrine.

426, 427 (9th Cir. 1970). The trial judge has broad discretion as to what type of information to utilize in sentencing, *see* Saros v. Richardson, 435 F.2d 821 (9th Cir. 1971), and it is by no means improper to use information not in the presentence report. United States v. Dockery, 145 U.S.App.D.C. 9, 447 F.2d 1178, 1183, cert. denied, 404 U.S. 950, 92 S.Ct. 299, 30 L.Ed.2d 266 (1971). Given this breadth of discretion and the fact it is not violative of due process not to reveal a formal report, it follows that it was within the discretion of the trial judge to decline to reveal the informally gathered information to appellant.

Affirmed.